**In re Neil William HAWES, Debtor.**

**Bankruptcy No. 87–00766.**

United States Bankruptcy Court, E.D. Wisconsin.

May 15, 1987.

Robert M. Weidenbaum, Madison, Wis., for debtor.

Jane C. Schlicht, Milwaukee, Wis., for Artists Corp. of America.

## DECISION

D.E. IHLENFELDT, Bankruptcy Judge.

On May 21, 1986, the debtor, Neil William Hawes, entered into a written employment contract with Artists Corporation of America ("Artists"). Hawes had been employed as a booking agent by Artists for the preceding five years, and Artists had been engaged in the business of booking entertainment for many years. The contract contained a "Covenant Not to Compete," whereby Hawes agreed that he would not solicit or accept business from any Artists customer for a period of two years after the termination of his employment. Hawes resigned from Artists on October 23, 1986. The issue in this chapter 13 case is whether Artists should be permitted to continue prosecution of a state court action in which it seeks to enforce the restrictive covenant.

On January 23, 1987, Artists sued in state court to recover trade secret information allegedly taken by the debtor and for injunctive relief. Artists was granted a preliminary injunction on February 4, 1987, in which Hawes was ordered to turn over all materials belonging to Artists and was enjoined "from any further conduct in violation of paragraph 8 [the covenant not to compete]." The court then adjourned the hearing to February 20, 1987 at 2:00 p.m.

"for the purpose of conducting an evidentiary hearing in order to enable the Court to determine the meaning of the language in Paragraph 8 ... and thus determine the likelihood of the plaintiff's succeeding in this lawsuit." On February 20, 1987 at 1:23 p.m., Hawes filed a petition under chapter 13 of the Bankruptcy Code.

Hawes filed his chapter 13 statement and completed schedules on March 9, 1987. In response to the question, "If you now operate a business or profession indicate the nature thereof," the statement indicates that he is a partner in "Total Entertainment Concepts." [1] The statement gives his occupation as "Entertainment Booking Agent," and his employer as "Total Entertainment Concepts." In his schedules, he listed four creditors:

Artists—disputed and amount unknown

Total Entertainment Corporation—$461.07—"Debtor's share of Partnership Debt"

First Wisconsin-Mayfair—$7,867.31—secured by 1985 Nissan automobile valued at $10,900

First Wisconsin-Brookfield—$2,075.70—Student Loans

Hawes has submitted a five year plan which proposes to pay the secured claim, 100% of the student loans, and 5% to other unsecured creditors. Assuming Hawes' share of the partnership debt is paid by the partnership, Artists is his only "other unsecured creditor"—the only creditor that will be paid 5%.

The trustee believes the plan provides for all of the debtor's projected disposable income to be applied to payments under the plan, with feasibility, however, contingent on the kind of claim that Artists might file. (§ 1325(a)(6) and 1325(b)(1)(B)) [2] Hawes listed Artists as a creditor in his schedules with the amount of its claim described as disputed and unknown. Artists can file a claim in this case if it believes it is entitled

---

1. A copy of the state court complaint filed with this court indicates his partner is Bruce Gerth, that Gerth had also been an employee of Artists, and that he had also terminated his employment with Artists in 1986. Gerth is also named as a defendant in the state court suit.

2. The plan will not be feasible if the restrictive covenant can be enforced against Hawes and his partner.

to damages by reason of Hawes' resignation or his actions while in Artists' employ. It can also file a claim for damages based on Hawes' alleged failure to honor the restrictive covenant, including such damages for the period between February 4, 1987 when the preliminary injunction was issued and February 20, 1987 when the chapter 13 case was filed. Section 101(4)(B) of the Bankruptcy Code defines "claim" to include the "right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, ..."

Artists is not now interested in filing a claim for prepetition damages of either kind, nor in seeking such damages in the state court. In fact, neither of the parties is concerned with the question of prepetition damages. They are interested only in whether the state court is or should be prevented, by reason of the filing of the bankruptcy case, from injunctively enforcing the restrictive covenant, and if not, the postpetition damages that would flow from a violation of the state court's injunction. *International Distribution Centers v. Walsh Trucking Co.*, 62 B.R. 723 (S.D.N.Y. 1986). Artists appears here for the sole purpose of obtaining authorization to continue with its state court action for injunctive relief, and Hawes' sole aim in these proceedings is to block enforcement of the covenant not to compete.

Artists has filed a motion for relief from stay and has objected to confirmation of the debtor's plan on the ground that it has not been proposed in good faith. The debtor in turn has objected to the motion for relief, moved for a finding of contempt for violation of the automatic stay, moved to reject the employment agreement as an executory contract, and moved for injunctive relief.

■ Hawes' motion to reject the employment contract is moot. His obligation under the contract was to perform services for Artists, and he ceased performing on October 23, 1986. The employment relationship between the parties ended at that time. Questions may have remained as to whether either party was entitled to damages, and whether the restrictive covenant was enforceable, but the contract was otherwise at an end. That Hawes remains subject to the terms of the restrictive covenant (assuming its enforceability under state law) does not make the contract executory within the meaning or intent of § 365 of the Bankruptcy Code.

Regardless of whether termination of the contract was in accord with its provisions, or alternatively, whether the manner in which it was terminated constituted a breach of contract, the contract is no longer executory. Declaring the contract to be executory and approving its rejection at this time would have no effect on the rights of the parties. Rejection of an executory contract is in itself no more than a breach of contract which permits the other party to file a claim for damages. § 365(g) of the Code; 2 *Collier on Bankruptcy*, p. 365–51 (15th ed.).

■ The issue in this case is not whether the contract is executory and subject to rejection, but whether the restrictive covenant can be enforced. The validity and enforceability of covenants barring an employee from competing with the employer after termination of the employment involve questions of state law. In Wisconsin, such covenants are lawful and enforceable if they are reasonably necessary for the protection of the employer.[3] In *Fields Foundation, Ltd. v. Christensen*, 103 Wis.2d 465, 309 N.W.2d 125 (1981), the court listed five inquiries that Wisconsin courts should make in order to evaluate the enforceability of covenants not to compete. The issue as to the enforceability of this particular covenant is presently pending in

---

3. Wis.Stat. § 103.465 Restrictive covenants in employment contracts. A covenant by an assistant, servant or agent not to compete with his employer or principal during the term of the employment or agency, or thereafter, within a specified territory and during a specified time is lawful and enforceable only if the restrictions imposed are reasonably necessary for the protection of the employer or principal. Any such restrictive covenant imposing an unreasonable restraint is illegal, void and unenforceable even as to so much of the covenant or performance as would be a reasonable restraint.

the state court and is a matter best left for that court to decide.

Artists' state court action seems clearly subject to the automatic stay of § 362 of the Bankruptcy Code. Section 362(a)(1) stays the commencement or continuation of a judicial action or proceeding against the debtor that was or could have been commenced before the commencement of the bankruptcy case.[4] The question which this court must decide is whether the stay should be vacated and Artists permitted to continue with its state court action for injunctive relief.[5]

In the case of *Butner v. United States, et al.,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979), the Court was concerned with the proper interpretation of the federal statutes governing the administration of bankrupt estates. Noting that property interests are created and defined by state law, the Court said that unless some federal interest requires a different result, there is no reason why such interest should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding. The Court said that such rights ought not to be changed "merely by reason of the happenstance of bankruptcy." *Id.,* at p. 55, 99 S.Ct. at p. 918.

In further delineation of its point, the court included the following quotation in footnote 9 of the *Butner* decision:

"The Federal Constitution, Article I, § 8, gives Congress the power to establish uniform laws on the subject of bankruptcy throughout the United States. In view of this grant of authority to the Congress it has been settled from an early date that state laws to the extent that they conflict with the laws of Congress, enacted under its constitutional authority, on the subject of bankruptcies are suspended. While this is true, state laws are thus suspended only to the ex-

tent of actual conflict with the system provided by the Bankruptcy Act of Congress." (citing cases)

There is no apparent conflict between bankruptcy law and the effort on the part of Artists to enforce the covenant not to compete. In the absence of such conflict, the fact that Hawes filed a bankruptcy petition ought not to affect the rights of the parties. It follows that Artists should be permitted to proceed with its state court action for injunctive relief. *In re Cooper,* 47 B.R. 842 (Bankr.W.D.MO.1985); *In re Cox,* 53 BR 829 (Bankr.M.D.FL.1985); *In re Peltz,* 55 B.R. 336 (Bankr.M.D.FL.1985); *In re Midwest Polychem, Ltd.,* 61 B.R. 559 (Bankr.N.D.IL.1986).

▪ Pursuant to § 1325(a)(3), Artists has also objected to confirmation of the debtor's plan on the ground that it was not proposed in good faith. The term, "good faith," is not defined in the Code or in its legislative history, and courts have said that no precise or comprehensive definition is possible. Good faith as set forth in § 1325(a)(3) requires more than technical compliance with the provisions of the statute. It requires an "honesty of purpose" on the part of the debtor and contemplates a broad judicial inquiry into the debtor's conduct and state of mind in proposing a plan. The court should determine whether under the facts and circumstances of the case, there is an abuse of the provisions, purpose, or spirit of chapter 13. *In re Rimgale,* 669 F.2d 426 (7th Cir.1982); *In re Estus,* 695 F.2d 311 (8th Cir.1982).

▪ The court is satisfied from the facts in this case that the plan proposed by Hawes does not represent an honest attempt to pay his debts, but constitutes instead an abuse of the provisions, purpose, and spirit of chapter 13. His chapter 13 petition is a mere litigating tactic—nothing more. As shown by his present occupation

---

**4.** § 362(a)(6) of the Bankruptcy Code, which stays any act to collect a claim that arose before the commencement of the bankruptcy case, is not germane. Artists is not seeking to collect a claim of that kind in its state court suit.

**5.** The parties have not discussed the stay as to that aspect of the state court action dealing with

recovery of property allegedly held by Hawes and belonging to Artists. If it is undisputed that the property Artists is seeking belongs to Artists, and the only issue is whether Hawes has it, the automatic stay may not apply. In practical terms, the matter will be resolved by the court's ruling on the other issues raised by the parties.

and employer, the filing of the petition just moments before the state court evidentiary hearing, and his 5% offer to Artists, it is clear his intent in filing the petition is not to deal fairly with his creditors, but that his purpose instead—his sole purpose—is to block Artists' efforts to enforce the covenant not to compete. Since it violates the spirit and purpose of chapter 13 and was not proposed in good faith, confirmation of the plan must be denied. *In re Waldron*, 785 F.2d 936 (11th Cir.1986); *In re Johnson*, 708 F.2d 865 (2d Cir.1983); *In re Canda*, 33 B.R. 75, 10 B.C.D. 1361 (Bankr. D.OR.1983).

An order will be entered vacating the stay and permitting Artists to pursue its state court action, and dismissing the chapter 13 case as not filed in good faith.

This decision shall stand as and for findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052.

### ORDER

The issue in this chapter 13 case is whether Artists Corporation of America should be permitted to continue prosecution of a state court action in which it seeks to enforce a "Covenant Not to Compete" contained in an employment contract with the debtor.

The court has this date filed its written decision. In accordance with that decision,

IT IS ORDERED:

1. The debtor's motion to reject the employment contract is dismissed as moot.

2. The debtor's motions for contempt and for injunctive relief are denied.

3. The motion of Artists Corporation of America for relief from stay is granted.

4. The objection to confirmation of the debtor's plan filed by Artists Corporation of America on the ground that the plan is not proposed in good faith is sustained.

5. This chapter 13 case is hereby dismissed.