**In re Perry Elton REGISTER and Martha A. Register, Debtors.**

**SILK PLANTS, ETC. FRANCHISE SYSTEMS, INC., Plaintiff,**

v.

**Perry Elton REGISTER and Martha A. Register, Defendants.**

Bankruptcy No. 380–01810.
Adv. No. 388–0198.

United States Bankruptcy Court,
M.D. Tennessee.

Jan. 11, 1989.

C. Kinian Cosner, Jr., Manier, Herod, Hollabaugh & Smith, Nashville, Tenn., for debtors.

William L. Norton, III, Roger G. Jones, Boult, Cummings, Conners & Berry, Nashville, Tenn., for plaintiff.

MEMORANDUM OPINION

GEORGE C. PAINE, II, Chief Judge.

The issue presented is whether a covenant-not-to-compete contained in a franchise agreement is still enforceable after the debtors-franchisees rejected the executory franchise agreement. The plaintiff, Silk Plants, Etc. Franchise Systems, Inc., is seeking to enjoin the debtors from operating a business in apparent violation of the covenant-not-to-compete. The following constitute findings of fact and conclusions of law. Bankr.R. 7052. This is a core proceeding. 28 U.S.C. § 157(c).

On March 8, 1986, the Registers executed a franchise agreement with the plaintiff granting the Registers a franchise to operate a Silk Plants, Etc. specialty retail store offering artificial flowers, plants and related items. Under part of the franchise agreement the debtors covenanted not to engage in any capacity in a business offering to sell or selling merchandise or products similar to those sold in the Silk Plants,

Etc. Systems business for a period of two years after the termination of the franchise agreement. The covenant-not-to-compete was also limited to business activities within a ten-mile radius of the Register's Silk Plants, Etc. store.

On March 15, 1988, the Registers filed their Chapter 13 bankruptcy petition. On May 18, 1988, the Registers rejected the franchise agreement through an agreed order with Silk Plants, Etc. Since then the Registers have operated a business very similar to their former Silk Plants, Etc. franchise. The plaintiffs then filed this adversary proceeding to enjoin the Registers from operating that store arguing that such activities violated the covenant-not-to-compete contained in the original franchise agreement.

■ Debtors in a bankruptcy proceeding may accept or reject executory contracts. 11 U.S.C. § 365. The primary purposes behind allowing debtors to reject executory contracts are (1) to relieve the estate from burdensome obligations while the debtor is trying to recover financially, and (2) to effect a breach of contract allowing the injured party to file a claim. *See Chattanooga Memorial Park v. Still (In re Jolly)*, 574 F.2d 349, 350–51 (6th Cir.1978); *In re Norquist*, 43 B.R. 224, 225–26 (Bankr.E.D.Wash.1984); *Burger King Corp. v. Rovine (In re Rovine Corp.)*, 6 B.R. 661, 666 (Bankr.W.D.Tenn.1980).

■ Both of these goals are furthered by permitting debtors to reject covenants-not-to-compete with the rest of the executory contract. In fact, equitably enforcing such clauses in contracts that have been rejected would directly frustrate the purposes of relieving debtors from burdens that would hinder rehabilitation. For these reasons the debtor should be able to reject the covenant-not-to-compete along with the rest of the executory contract; Silk Plants, Etc. should then be able to file a claim for the injury resulting from that breach of contract under § 502(g) of the Bankruptcy Code. *See Rovine* 6 B.R. at 666. This is also consistent with the general rule that executory contracts must be accepted or rejected as a whole. 6 B.R. at 666. The

franchise agreement here clearly is an executory contract and as such may be rejected as it was in this case.

■ Silk Plants, Etc., however, argues that the covenant-not-to-compete was not executory and so cannot be rejected. According to Silk Plants, the covenant was severable from the executory parts of this contract and was based on a separate consideration which Silk Plants, Etc. had fully provided. This separate consideration according to Silk Plants, Etc. was the provision of training and information at the beginning of the franchise relationship. Silk Plants argues that it fully performed its portion of this severable agreement when it provided the promised training and information to the debtors.

The franchise agreement, when taken as a whole, however, shows that the debtors and Silk Plants Etc. contemplated that the covenant-not-to-compete would only be enforceable if Silk Plants performed on the entire franchise agreement, not just the sections requiring it to provide special training to the debtors. If Silk Plants had rejected the contract in a bankruptcy proceeding or had otherwise breached the franchising agreement the debtors clearly would not have had to honor the covenant-not-to-compete.

Silk Plants' reliance on *Leasing Service Corp. v. First Tennessee Bank, N.A.*, 826 F.2d 434 (6th Cir.1987) is misplaced. The question there was whether the granting and perfecting of a security interest was severable from the rest of a lease. A security interest is far different from a covenant-not-to-compete. Once perfected the security interest is a present interest in property; it establishes the priority of the holder of the security interest; and the existence of the security interest is not dependent on the holders' performance of the rest of the contract. For example, in *Leasing Service Corp.* if the lessor had breached, it would have been liable to the tenant for damages. If the lessor had some valid claim against the tenant, however, the security interest would have been available to satisfy that claim regardless of the lessor's breach. Here, however, the

franchisor's ability to enforce the covenant-not-to-compete is totally dependent on his faithful performance of the entire agreement. Thus the covenant-not-to-compete is not severable from the rest of the executory contract.

Silk Plants, Etc. next argues that a covenant-not-to-compete is enforced by an injunction and other equitable relief and not by a suit for money damages. Therefore the breach of this covenant does not give rise to a claim as defined by § 101(4). Silk Plants, Etc.'s right to equitable relief then should not be affected by the bankruptcy.

In support of this claim Silk Plants, Etc. cites *In re Noco, Inc.*, 76 B.R. 839 (Bankr. N.D.Fla.1987) and *In re Carrere*, 64 B.R. 156 (Bankr.C.D.Cal.1986). Both of these cases may be distinguished from the instant case because in both cases the filing of bankruptcy had elements of bad faith. The bankruptcies seemed to have been filed solely for the purpose of avoiding the covenants not to compete. Such is not the case here. In addition in *In re Noco*, the court specifically found that the contract was not executory. *In re Noco*, 76 B.R. at 843.

To the extent that these cases support Silk Plants, Etc.'s position, this court declines to follow them. For purposes of § 101(4), the principle issue is whether this court is capable of reducing the injury that Silk Plant incurs as a result of the breach of this covenant to a dollar amount. If it can, then Silk Plants has a claim under §§ 101(4) and 502(g). *See* 2 Collier on Bankruptcy Par. 101.04 (L. King Ed. 15th Ed.1988). Although state courts have ruled that they cannot put a value on the injury incurred for breach of these covenants this Court believes that it can. As the court in *Norquist* noted, "The equitable configuration of this court may very well permit a just determination and treatment of [a breach of a covenant-not-to-compete] which would not be accomplished under the rigid application of evidentiary rules in state court." *Norquist*, 43 B.R. at 231. This approach furthers the underlying goals of § 365 by relieving the debtor completely of the burden of this executory contract and by granting the creditor a claim for the injury incurred.

The court holds that the covenant-not-to-compete terminated when the contract was rejected and that Silk Plants may file a claim for the breach of the entire franchise agreement, including the covenant-not-to-compete, under § 502(g).

IT IS, THEREFORE, SO ORDERED.